IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No.  06-cv-01170-LTB-PAC

EAGLEDIRECT MARKETING SOLUTIONS, INC., d/b/a EAGLE:XM, a Colorado
corporation,

             Plaintiff,

v.

ENGENUS NA LLC, a New York corporation,

             Defendant.

_____

ORDER

_____

        This case is before me on a Motion to Dismiss filed by Defendant, Engenus N.A., LLC

(hereafter "Engenus"), in which it seeks to dismiss the complaint filed in this matter by Plaintiff,

EagleDirect Marketing Solutions, Inc., d/b/a  Eagle:XM (hereafter "EagleDirect"), for lack of

personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  Oral argument would not materially

assist me in my determination.  After consideration of this motion, as well as all related pleadings

and attachments, and for the reasons set forth below, I DENY Engenus' motion.

**I.  Background**

        EagleDirect is a Colorado corporation, with its principal place of business in Colorado.  It

provides multiple media marketing services to its clients.  Engenus is a New York corporation

with its principal place of business in New York.  It owns information technology, a key

component of which is a service that allows cellular telephone users to receive marketing

communications from companies via text messaging.

The facts relevant here are as follows.  On August 5, 2005, EagleDirect's Chief Marketing Officer, Mark Barounos, met an Engenus shareholder at a social party in Colorado.  After the party, the shareholder contacted the Managing Director of Engenus, Greg Gannon, regarding the chance meeting.  As a result, Mr. Gannon contacted Mr. Barounos via email on August 9, 2005.  The email indicated that Gannon had reviewed EagleDirect's website and noted that their respective businesses might benefit from an "introduction."  The email also contained Engenus promotional materials.

After Barounos responded, Engenus arranged for a conference call that afternoon.  The parties discussed the possibility of EagleDirect using Engenus' technology as part of its marketing services.  Barounos then meet with Gannon and other Engenus personnel during a trip to New York on August 16, 2005.  After that meeting, Engenus signed EagleDirect's standard non-disclosure agreement and the parties continued to explore a possible business relationship via numerous emails and phone conversations.

Ultimately, the parties' relationship broke down sometime in the Spring of 2006.  EagleDirect maintains that they engaged in negotiations but were unable to come to an agreement.  Engenus, on the other hand, asserts that they agreed to the essential contract terms, but that EagleDirect failed to provide a written contract memorializing the terms of their agreement.  As a result, on June 5, 2006, Engenus sent EagleDirect an invoice for its "billable services performed" to date in the amount of $291,650.00.   After receiving the invoice, EagleDirect's president requested that Engenus "substantiate its invoice."  Engenus' Greg Gannon "refused to do so and threaten litigation in the event of nonpayment."  In response, EagleDirect filed this lawsuit on June 19, 2006, seeking a declaratory judgment, pursuant to Fed.

2

R. Civ. P. 57 and 28 U.S.C. § 2201, that no contractual relationship exists between EagleDirect and Engenus and, as such, that Engenus is not entitled to collect the invoice amount of $291,650 from EagleDirect.

As to the personal jurisdiction allegations in the complaint, EagleDirect asserts that it participated in telephone conferences with Engenus and likewise reviewed and responded to email correspondence from Engenus from its place of business in Colorado; that Engenus advertised its services in Colorado via its website; and that EagleDirect accessed that website from its place of business in Colorado on multiple occasions during the course of their discussions. By virtue of theses activities in the state of Colorado, EagleDirect asserts that this court has personal jurisdiction over Engenus.

## II. Law

To invoke jurisdiction over a nonresident defendant in a diversity case, Colorado's long-arm statute provides for personal jurisdiction over defendants who, either in person or by an agent, engage in various activities within the state including the transaction of business. Colo.Rev.Stat. §§ 13-1-124 and -125; *see also National Business Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F.Supp.2d 1250, 1253 -1254 (D. Colo. 2000). Pursuant to Colorado law, this Court may exercise personal jurisdiction to the full extent of the Due Process Clause of the Fourteenth Amendment. *Id.* at 1254 (in Colorado the analysis is a single inquiry; whether the exercise of personal jurisdiction over a diversity defendant comports with due process).

Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 472-73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).   The foreseeability that is critical to the due process analysis requires that the defendant's "conduct and connection" with the forum state be such that he or she should reasonably anticipate being haled into court there.  *Id.* at 474. As such, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Id.* at 471-72 (*quoting International Shoe Co. v. State of Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

This "minimum contacts" standard for the transaction of business may be satisfied in either of two ways – general or specific jurisdiction.  *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir.1996); *F.D.I.C. v. First Interstate Bank of Denver, N.A.*, 937 F.Supp. 1461, 1468 (D. Colo. 1996).   In this case, EagleDirect does not argue that Engenus is subject to the Court's general jurisdiction.  Rather, it contends Engenus has sufficient contacts with Colorado to subject it to the Court's specific jurisdiction.  "Specific jurisdiction may be exercised where the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."  *Kuenzle v. HTM Sport-Und Freizeitgerate AG, supra*, 102 F.3d at 456.

Even where a plaintiff has made a showing of minimum contacts, a court must ensure that an assertion of personal jurisdiction will comport with fair play and substantial justice.  *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)(*quoting International Shoe v. Washington, supra*, 326 U.S. at 316).  Such considerations may sometimes serve to establish the reasonableness of jurisdiction upon a lesser

showing of minimum contacts than would otherwise be required. *Burger King v. Rudzewicz, supra*, 471 U.S. at 477. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id; see also Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1271 -1272 (Colo. 2002). As a result, these two considerations operate on a sliding scale. The stronger the minimum contacts, the greater the burden on the defendant to show that jurisdiction is unreasonable. Conversely, a relatively weak showing of unreasonableness combined with insubstantial contacts may defeat jurisdiction. *Schneider v. Cate*, 405 F.Supp.2d 1254, 1262 (D. Colo. 2005)(*citing OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

Accordingly, Colorado has adopted a three-prong test for specific personal jurisdiction: (1) the defendant must purposefully avail himself of the privilege of acting in Colorado or of causing important consequences in the state; (2) the cause of action must arise in the forum state from the consequences of the defendant's activities; and (3) the activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Encore Productions, Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1116 (D. Colo. 1999)(*citing F.D.I.C. v. First Interstate Bank of Denver, supra*, 937 F.Supp. at 1468).

### III. Standard of Review

The plaintiff bears the burden of establishing personal jurisdiction over a defendant in a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988). Where, as here, a defendant files a motion to dismiss that challenges personal jurisdiction prior to trial, the plaintiff is only required

to make a *prima facie* showing, based on affidavits and other written materials, and the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *National Business Brokers v. Jim Williamson Productions, supra*, 115 F.Supp.2d at 1253 (*citing Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984)); *see also Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir.1995).   If the parties present conflicting affidavits, I must resolve all disputed facts and draw all reasonable inferences in the plaintiff's favor. *Encore Productions v. Promise Keepers, supra*, 53 F.Supp.2d at 1114 (*citing Behagen v. Amateur Basketball Ass'n, supra*, 744 F.2d at 733).

## IV.  Minimum Contacts Analysis

In its motion to dismiss, Engenus argues that EagleDirect cannot met its burden of making a *prima facie* showing that Engenus had contacts with Colorado sufficient to establish specific personal jurisdiction in this matter.  I disagree.

The Supreme Court has ruled that an individual's contract with an out-of-state party does not automatically establish sufficient minimum contacts in the other party's home forum; instead a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King v. Rudzewicz, supra*, 471 U.S. at 478 (*quoting Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S.Ct. 602, 87 L.Ed. 777 (1943)); *see also Custom Energy, LLC v. Conservation Group*, 93 F.Supp.2d 1145, 1148 (D. Kan. 2000).  Accordingly, the parties' prior negotiations, contemplated future consequences, actual course of dealing, and contract terms must be evaluated to determine whether a defendant purposefully established minimum contacts within the forum.

6

*Id.*; *see also New Frontier Media, Inc. v. Freeman,* 85 P.3d 611, 614 (Colo. App. 2003)("in evaluating the sufficiency of contacts pursuant to a contract, we examine the origin of the relationship, the significance of the negotiations, the execution of the contract itself, and any future obligations in Colorado by the defendant arising out of the contract").   Therefore, I look at these circumstances when applying the first prong of the applicable specific personal jurisdiction test to determine whether Engenus "purposefully availed" itself of the privilege of acting in Colorado or of causing important consequences in the state.

In this case, the parties' business relationship began with a chance encounter at a Colorado party.  The parties then identified and explored a possible business relationship, and executed a non-disclosure agreement in that process, over a six-month time period.  Finally, the parties agree that they negotiated contract terms.  Although it is disputed as to whether they ultimately agreed, it is undisputed that any such agreement was not reduced to writing and that their relationship ultimately terminated.

EagleDirect asserts that Engenus' activities that targeted it as a potential customer – including Gannon's initial email seeking an introduction, subsequent "regular and systematic" emails and telephone communications, and forwarded product brochures and marketing materials – serve as sufficient evidence of a purposeful availment of the privilege of doing business in Colorado.  Engenus contends, however, that it was EagleDirect that sought out its services, came to New York to discuss the viability of a business relationship and, ultimately, negotiated and reached an agreement in New York for Engenus to provide it services.

While not conclusive, solicitation of business is itself  "some evidence suggesting

7

purposeful availment." *Far West Capital v. Towne, supra*, 46 F.3d at 1076.  Each party contests

the other's characterization of who sought out or solicited the business relationship; however, it is

undisputed that after the initial chance meeting, it was Engenus that first reached out to

EagleDirect for an introduction.  Moreover, although both parties may have continued that

conversation, it is clear that Engenus was at the very least the initiator of an appreciable portion

of the numerous communications with EagleDirect here in Colorado.  It is also undisputed that

Engenus regularly forwarded marketing and promotional materials to EagleDirect in Colorado.  It

is an inescapable fact of modern commercial life that a substantial amount of business is transacted

solely by mail, email and telephone communications across state lines.  *See Burger King v.*

*Rudzewicz, supra*,  471 U.S. at 476.  Although these communication contacts, in and of

themselves, might not be sufficient to establish that Engenus purposefully availed itself of the

privilege of doing business in this forum, it constitutes supporting evidence thereof.  *See Pro*

*Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270, 1277 (10th Cir. 2005)(noting that phone

calls and letters – made in the course of the parties building a business relationship, maintaining

that relationship, and attempting to salvage that relationship – provide "additional evidence" that

the defendant pursued a continuing business relationship with a corporation in the forum state);

*Soma Medical Intern. v. Standard Chartered Bank,* 196 F.3d 1292, 1299 (10th Cir.

1999)(comparing a case where hundreds of communications contributed to the minimum contacts

analysis, with a fortuitous banking relationship with a limited number of faxes, written

communications, and wire transfers).

In addition, the parties' resulting contract, if it was or would have been formed, would

have created rights and obligations with EagleDirect as a Colorado resident.  "[W]ith respect to

8

interstate contractual obligations, . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King v. Rudzewicz, supra*, 471 U.S. at 473 (*quoting Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).  It was clearly contemplated by the parties that the negotiations in this case could have or did result in a contract that would cause important consequences in Colorado.  *See generally D.D.J. Development, Ltd. v. N & N Intern.,* 761 F.Supp. 758, 761 (D.Colo. 1991)(holding that the obvious purpose behind the negotiation of a loan for a Colorado business venture was for the defendant to avail himself of the privilege of conducting business there); *Grand Entm't Group Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482-83 (3d Cir. 1993)(finding that the defendant's engagement "in negotiations for an agreement that would have created rights and obligations among citizens of the forum and contemplated significant ties with the forum" constituted a significant activity toward the forum state).

EagleDirect also relies upon the parties' execution of their non-disclosure agreement as evidence of Engenus' purposeful availment of the privilege to do business in Colorado.  After both parties expressed an initial interest to do business, Engenus sent EagleDirect its standard form non-disclosure agreement which EagleDirect rejected for several reasons – including that it contained a New York jurisdiction requirement.  In response, Engenus asked for and signed EagleDirect's basic non-disclosure agreement, which provided that the agreement be governed by Colorado law.  Although I question that the Colorado choice of law provision in the parties' non-disclosure agreement definitively demonstrates intent that their relationship be "centered in Colorado," Engenus' willingness to submit to jurisdiction in Colorado for the purpose of a non-

9

disclosure controversy between the parties is evidence of Engenus' intent to avail itself of the benefits of doing business with a Colorado corporation. *See generally Fairbrother v. American Monument Found., LLC*, 340 F.Supp.2d 1147, 1157 FN2 (D.Colo. 2004) (a forum-selection clause "reinforces" a personal jurisdiction analysis and is relevant in assessing minimum contacts and the parties' relationship and expectations).

Finally, EagleDirect does not contest Engenus' assertion that its website is passive in nature and, as such, does not constitute specific evidence of purposeful availment to seek Colorado business. *See Soma Medical Intern. v. Standard Chartered Bank*, *supra*, 196 F.3d at 1299 (concluding that the maintenance of a passive website, which merely provides information to interested viewers, does not constitute purposeful availment such that it would created an expectation to be haled into court of a particular state). However, Engenus does not dispute EagleDirect's assertion that Engenus used its website to provide specifically-tailored promotional demonstrations to EagleDirect in Colorado – accessible by EagleDirect through a password issued by Engenus. Based on the foregoing, I conclude that Engenus' contacts with EagleDirect in Colorado were purposefully made, and that the quality and nature of those contacts are not such that they constitute random, fortuitous or attenuated acts. *See Burger King v. Rudzewicz, supra,,* 471 U.S. at 486.

As to the second prong of the minimal contacts analysis for specific jurisdiction, EagleDirect's declaratory judgment cause of action arises in Colorado from the consequences of Engenus' activities. It is clear that a nexus exists between Engenus' forum-related contacts and EagleDirect's cause of action here. It was Engenus' acts in the course of the parties' attempt to establish a business relationship, in conjunction with its invoice sent to EagleDirect for the work

10

performed after their relationship soured, that resulted in EagleDirect's cause of action seeking a declaratory judgment ruling on the nature of their relationship.  As such, I conclude that this claim arose out of and relates to Engenus' forum-related activity.  *See Pro Axess v. Orlux Distribution, supra,* 428 F.3d at 1277; *OMI Holdings v. Royal Ins. Co., supra,* 149 F.3d at 1095. EagleDirect's burden to establish its *prima facie* case here is light.  *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995).  Under theses circumstances, I agree with EagleDirect that Engenus purposefully directed its activities at EagleDirect, as a resident of Colorado, and that EagleDirect's claim arises out of or relates to actions by Engenus that created a substantial connection with Colorado.  Engenus' conduct and connection with Colorado were such that it "should reasonably anticipate being haled into court" here.  *Burger King v. Rudzewicz, supra,* 471 U.S. at 486.   I conclude that Engenus' contacts with Colorado in this matter are sufficient to establish a *prima facie* case of minimum contacts with Colorado to subject it to the Court's specific personal jurisdiction.

### V.  Reasonableness Analysis

However, my due process analysis continues as I am required to assess of whether exercise of jurisdiction here is so unreasonable as to violate "fair play and substantial justice."  In so doing, I am to consider the following factors:  (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *OMI Holdings v. Royal Ins. Co., supra,* 149 F.3d at 1095 (*citing Asahi Metal Industry v. Superior Court, supra,* 480 U.S. at 113).

Engenus' sole argument related to fair play and substantial justice is based on its assertion that the contract negotiations, and resulting agreement, took place in New York for the provision of services by them in New York.  As a result, Engenus' argument here is, in essence, that this is a breach of contract case – as opposed to an anticipatory declaratory action – and thus New York is the proper forum for this matter.  Engenus maintains that EagleDirect is the breaching party and that allowing them to force Engenus to litigate this matter in Colorado, merely because it won the race to the courthouse, offends the concepts of fair play and justice.

In support of this argument, Engenus cites *Qwest Communications International, Inc. v. Thomas,* 52 F.Supp.2d 1200, 1206 (D. Colo. 1999).  There the district court ruled that although it had personal jurisdiction over the out-of-state defendants, it nonetheless dismissed the complaint under the Declaratory Judgment Act by exercising its discretion to do so in light of another pending breach of contract suit.  In this context, the court determined that "[t]he mere fact that a declaratory judgment action, seeking nothing more than a declaration of the parties rights and defendant's nonliability, is first-filed in a different federal court, does not entitle that action to deference."  *Id.*  In this case, however, there is no other pending litigation and, more importantly, I have not been asked to dismiss this case based on equitable considerations due to the declaratory relief sought.  Moreover, I note that "anticipatory filing of a declaratory judgment action is not improper where the opposing party has created a controversy by threatening litigation but has withheld filing suit," as is alleged here.  *See OpenLCR.com, Inc. v. Rates Technology, Inc.,* 112 F.Supp.2d 1223, 1231 (D. Colo. 2000).

Furthermore, I note that:  1) in this age of instant communication and modern transportation it is only in "highly unusual cases" that inconvenience to the defendant will "rise to

12

a level of constitutional concern;" 2) Colorado has an important interest in providing a forum in which its citizens can seek redress; 3) EagleDirect, as a Colorado corporation, has a strong interest in litigating this case in Colorado; 4) because "[t]he judicial system has an interest in ensuring the economic and efficient administration and resolution of controversies in the court system and preventing duplicative lawsuits ... [and a]t this stage of the litigation, the present action is the only case pending" the judicial system's interest are not adversely affected by the continuation of this lawsuit; and  5) Engenus has failed to demonstrate that any specific policy of another state would be subverted by the exercise of personal jurisdiction over it in this case.  *See Sheehan Pipe Line Const. Co. v. Laney Directional Drilling Co.*, 228 F.Supp.2d 1271, 1277 - 1278 (N.D. Okla. 2002)(citations omitted).

In sum, these five factors do not weigh in Engenus' favor and, thus, it cannot establish a "compelling case" that the exercise of jurisdiction by this court would be unreasonable.  *See Burger King v. Rudzewicz, supra*, 471 U.S. at 477.  Although EagleDirect may have been able to obtain relief by bringing suit or defending against a suit filed by Engenus in New York, Engenus likewise has a forum to raise its breach of contract claim as a counterclaim in this declaratory judgment action.  I conclude that this court's exercise of personal jurisdiction over Engenus, as a defendant with sufficient  minimum contacts in Colorado, would not offend traditional notions of fair play and substantial justice and is reasonable in light of the circumstances presented here.  Therefore, I conclude that this court's exercise of specific personal jurisdiction over Engenus comports with the requirements of due process.

Accordingly, for the reasons set forth here, Defendant, Engenus N.A. LLC's Motion In Lieu of an Answer to Dismiss for Lack of Jurisdiction and Incorporated Memorandum of Law **[Doc # 4]** is DENIED.

Dated: October   17   , 2006, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE